FILED
2026 SEP 11 AM 9:58
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

KERRY RICK HUBBLE,

Plaintiff,

v.

HEPWORTH LEGAL / HEPWORTH & ASSOCIATES, LLC;
MICHAEL K. HEPWORTH;
HALLIE KINSLEY;
JACQUE M. RAMOS; and
KRISTINE MAXWELL,

Defendants.

Case: 2:26-cv-00846
Assigned To : Pead, Dustin B.
Assign. Date : 09/11/2026
Description: Hubble v.
Hepworth Legal / Hepworth & Associates et al

Case No. __________

# COMPLAINT

## JURY TRIAL DEMANDED

### I. FEDERAL QUESTION, ORIGINAL JURISDICTION, PARTIES, ENTERPRISE, AND VENUE

**1.** Plaintiff Kerry Rick Hubble brings this civil action arising from professional legal services provided in connection with Plaintiff's underlying property-insurance dispute with Bear River Mutual.

**2.** Plaintiff's first and principal federal civil cause of action is Civil RICO under 18 U.S.C. §§ 1962(c) and 1964(c). Plaintiff alleges, only to the extent established by the evidence, that responsible natural persons conducted or participated in the affairs of a legally distinct law-office enterprise through qualifying racketeering activity involving materially false or misleading billing, representations, omissions, concealment, and related communications used to obtain or retain money and continued reliance.

**3.** This Court has original federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a civil cause of action arising under 18 U.S.C. §§ 1962(c) and 1964(c). Section 1964(c) expressly creates a private civil remedy for a person injured in business or property by reason of a violation of § 1962, subject to all statutory requirements.

**4.** Plaintiff separately alleges an independent federal claim under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12182, with enforcement under 42 U.S.C. § 12188 and interference under 42 U.S.C. § 12203(b) only to the extent the statutory elements are established.

**5.** The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's related state-law claims for legal malpractice/professional negligence, breach of fiduciary duty, breach of contract, fraud, fraudulent misrepresentation, fraudulent concealment, and fraudulent billing because those claims derive from the same attorney-client relationship and common nucleus of operative facts.

**6.** Defendant Hepworth Legal / Hepworth & Associates, LLC (the 'Firm Defendant') undertook to provide

professional legal services and accepted payment. For Plaintiff's principal § 1962(c) theory, the Firm Defendant is alleged as the distinct enterprise and is not alleged as the identical RICO person for that same theory; the Firm Defendant remains a Defendant on the separately pleaded non-RICO claims to the extent applicable.

**7.** Plaintiff names Michael K. Hepworth, Hallie Kinsley, Jacque M. Ramos, and Kristine Maxwell as Individual RICO Defendants only to the extent the presently identified records and discovery establish individualized participation in the conduct of the alleged enterprise through qualifying racketeering activity. Mere employment, title, or association with the firm is not alleged to be sufficient.

**8.** Venue is alleged to be proper in the District of Utah under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Utah and the legal-services operation at issue was conducted in Utah.

**9.** Plaintiff presently seeks damages totaling $2,225,000.00 under the related state-law claims, subject to applicable law and proof, together with any separate relief legally available under Civil RICO and the ADA, without duplicative recovery.

## FACTUAL BACKGROUND AND CHRONOLOGY

**10.** Plaintiff suffered substantial damage to his property and pursued an insurance claim involving Bear River Mutual.

**11.** The underlying insurance dispute concerned substantial repair and structural issues, including alleged roof and structural damage and the costs necessary to restore the property.

**12.** Plaintiff's documentation reflects repeated communications concerning unresolved damage, engineering issues, repair requirements, contractor difficulties, insurance payments, and structural conditions.

**13.** Bear River Mutual correspondence addressed Plaintiff's contention that additional damage existed that had not been adequately addressed by the insurer's payment.

**14.** On or about August 26, 2022, Plaintiff consulted with Defendant concerning the insurance dispute and his property.

**15.** On or about August 26, 2022, Plaintiff completed a general intake concerning the matter.

**16.** On or about August 29, 2022, documentation concerning the representation was executed through Defendant's intake and electronic-signature process.

**17.** On or about September 1, 2022, Plaintiff sent Defendant and personnel associated with Defendant the history and supporting files concerning the Bear River matter.

**18.** On or about September 2, 2022, Plaintiff paid Defendant an initial retainer of approximately $5,000.00 in connection with the Bear River matter.

**19.** The payment subsequently cleared through Defendant's banking and trust-account system.

**20.** On or about September 22, 2022, Defendant acknowledged the payment and the representation.

**21.** During September 2022, Plaintiff communicated that Bear River Mutual was delaying the claim and that Plaintiff had contacted the Utah Insurance Department concerning the dispute.

**22.** On or about September 26, 2022, Plaintiff communicated concerning the continuing structural condition of the property and the need to expose, inspect, and repair the damaged areas.

**23.** Plaintiff specifically informed Bear River Mutual that substantial structural damage remained unresolved.

**24.** On or about September 28, 2022, Plaintiff sent Defendant personnel, including Michael Hepworth, Hallie, and Jacque, files and photographs concerning the alleged wind and structural damage.

**25.** On or about October 2, 2022, a contractor bid concerning roof structural repairs was sent in connection with the matter.

**26.** During October 2022, Plaintiff continued communicating with Bear River Mutual concerning the structural problems that Plaintiff alleges the insurer continued to ignore.

**27.** On or about October 31, 2022, Bear River Mutual communicated with Defendant concerning engineering materials and photographs.

**28.** Plaintiff alleges that Bear River Mutual relied upon or referred to an engineering assessment while refusing to address substantial portions of the claimed structural repairs.

**29.** Plaintiff alleges that Bear River Mutual stated that certain repairs would not be paid and that Plaintiff would need to obtain additional engineering or other evidence independently.

**30.** Plaintiff continued providing Defendant with information concerning building requirements, structural conditions, photographs, engineering materials, contractors, and repair needs.

**31.** On or about November 15, 2022, Plaintiff submitted a wind-damage rebuttal concerning the insurance claim.

**32.** On or about November 22, 2022, Plaintiff received further correspondence from Bear River Mutual concerning the unresolved dispute and forwarded or communicated the information in connection with Defendant's representation.

**33.** Plaintiff alleges that the matter continued into 2023 without the affirmative legal action Plaintiff had repeatedly requested.

**34.** On or about February 4, 2023, Bear River Mutual communicated with Defendant concerning its position concerning engineering expenses and an engineering report.

**35.** Plaintiff alleges that the engineering material was thereafter not adequately used to resolve the underlying dispute.

**36.** On or about February 10, 2023, Plaintiff communicated to Defendant personnel, including Jacque, Tam, and Hallie, that he had additional files and expressly stated that he needed a lawyer letter because nothing was happening.

**37.** On or about February 27, 2023, Defendant sent or received additional information concerning the Bear River matter.

**38.** On or about March 8, 2023, attorney and personnel responsibilities concerning Plaintiff's matters changed, including involvement by Jacque Ramos and Natalie Molin and subsequent involvement by Kristine Maxwell.

**39.** On or about March 10, 2023, Plaintiff paid three Defendant invoices associated with his matters and communicated with Kristine Maxwell.

**40.** On or about March 27, 2023, Plaintiff again expressly stated that he needed a lawyer letter and sent substantial additional Bear River files, including approximately 27 pages of materials and photographs.

**41.** Plaintiff alleges that, despite Defendant having been retained in 2022, substantial affirmative work necessary to advance the Bear River claim still had not been completed.

**42.** On or about April 3, 2023, Defendant generated billing reflecting work concerning a demand letter.

**43.** On or about April 4, 2023, Plaintiff sent Defendant additional contractor bids concerning the wind-damage claim.

**44.** In April 2023, Defendant requested an additional $3,000.00 retainer concerning the Bear River matter.

**45.** Plaintiff paid that additional retainer.

**46.** Defendant's records reflected receipt of the additional payment.

**47.** Plaintiff alleges that Defendant therefore had received approximately $8,000.00 in retainers in connection with the representation, in addition to other amounts reflected in billing.

**48.** On or about April 12, 2023, Plaintiff communicated with Kristine Maxwell and offered to provide any additional information needed.

**49.** On or about April 12-14, 2023, Defendant communications reflected that work on the Bear River matter was beginning or needed to proceed.

**50.** On or about April 21, 2023, Plaintiff received insurance-policy material that had been requested in connection with the representation.

**51.** Defendant's billing records reflected review of the Bear River policy.

**52.** Defendant's billing records also reflected drafting or preparation of a demand letter.

**53.** Plaintiff alleges that he was never provided the completed demand letter reflected in those billing entries.

**54.** Plaintiff alleges that he has never seen the purported completed legal work product for which those entries were charged.

**55.** During April and May 2023, Defendant continued billing Plaintiff concerning the Bear River matter.

**56.** Plaintiff continued supplying evidence necessary to pursue the insurance claim.

**57.** On or about May 1, 2023, Plaintiff communicated building-inspection information concerning structural damage to Defendant.

**58.** Plaintiff also identified a new local general contractor, Kent Biesinger, in connection with the property.

**59.** On or about May 8, 2023, a local building inspector, Cameron Chiff, communicated information identifying structural damage.

**60.** On or about May 12, 2023, additional inspection or engineering information was communicated.

**61.** On or about May 15, 2023, Defendant personnel sent Plaintiff information concerning a roofer, although Plaintiff alleges that the matter required broader general-contractor work.

**62.** On or about May 30-31, 2023, Plaintiff continued organizing contractors and providing photographs, engineering information, and correspondence.

**63.** Plaintiff alleges that Defendant had continuing access to substantial evidence concerning the

underlying insurance dispute.

**64.** On or about June 27, 2023, contractor Kent Biesinger prepared an initial bid, which Plaintiff alleges identified additional items requiring consideration.

**65.** On or about July 4, 2023, Plaintiff provided contractor-related files and communicated that he needed a bid and contractor assistance for the Bear River matter.

**66.** Plaintiff alleges that Defendant was informed of these developments.

**67.** On or about July 10, 2023, Plaintiff's last known substantive correspondence with Defendant concerning the Bear River matter occurred before the approaching deadline, and Plaintiff alleges that he still had not received the promised demand letter.

**68.** On or about August 10, 2023, Plaintiff sent Defendant a contractor estimate from Kent Biesinger of approximately $88,864.00.

**69.** On or about August 12, 2023, Plaintiff sent Defendant updated bid information and his own repair estimate or spreadsheet of approximately $91,200.00.

**70.** Plaintiff alleges that these materials demonstrated the substantial economic significance of the underlying claim.

**71.** Plaintiff alleges that Defendant nevertheless failed to take the legal action for which Defendant had been retained and failed adequately to preserve Plaintiff's rights before the deadline Plaintiff identifies as September 8, 2023.

**72.** On or about September 4, 2023, Plaintiff became concerned that Kristine Maxwell was no longer handling the matter and that Plaintiff was not receiving adequate communication concerning the status of the representation.

**73.** Plaintiff alleges that the absence of communication and uncertainty concerning the attorney responsible for the matter materially impaired his ability to obtain substitute representation before the deadline.

**74.** On or about September 7, 2023, Defendant issued Plaintiff a refund of approximately $1,045.00 concerning the Bear River representation.

**75.** Plaintiff alleges that the refund occurred approximately one day before the September 8, 2023 deadline identified by Plaintiff.

**76.** Plaintiff alleges that Defendant did not adequately notify him beforehand that the representation was terminating or otherwise materially disrupted at a time when an imminent deadline threatened his ability to preserve and pursue the underlying insurance claim.

**77.** Plaintiff alleges that no completed demand letter had been delivered to him before the alleged deadline.

**78.** Plaintiff alleges that September 8, 2023 was therefore reached without the underlying claim having been timely preserved or pursued in the manner Plaintiff had retained Defendant to accomplish.

**79.** Plaintiff alleges that the resulting loss of opportunity followed Defendant's alleged course of undertaking the representation, accepting payment, receiving evidence, billing for legal work, representing or permitting Plaintiff to believe that the matter was being handled, and failing adequately to protect the claim before the alleged deadline.

**80.** Plaintiff further alleges that attorney and personnel turnover materially affected the representation.

**81.** Plaintiff's matter passed among or involved multiple personnel associated with Defendant, including Michael Hepworth, Hallie, Jacque Ramos, Natalie Molin, and Kristine Maxwell.

**82.** Plaintiff alleges that Kristine Maxwell subsequently left Defendant's firm and that Plaintiff was left without effective continuity of representation concerning the Bear River matter.

**83.** Plaintiff alleges that the transition among personnel contributed to uncertainty concerning responsibility for the matter and the status of the promised legal work.

**84.** Plaintiff alleges that he continued attempting to determine what had happened to the matter after the alleged deadline.

**85.** On or about September 8, 2023, Plaintiff alleges that he learned or confirmed that the relevant deadline had passed without the legal action he had expected Defendant to undertake.

**86.** Plaintiff alleges that subsequent communications raised questions concerning an alleged letter or legal work product that Plaintiff had never received.

**87.** Plaintiff alleges that an alleged letter later referenced by others was not located or provided to him.

**88.** In 2024, Plaintiff continued attempting to obtain the records and determine what had occurred during Defendant's representation.

**89.** On or about April 4, 2024, a Defendant invoice reflected approximately $1,955.00 in work concerning the Bear River matter.

**90.** Plaintiff alleges that he had not received the underlying pages or work product corresponding to that billing.

**91.** On or about May 14, 2024, Plaintiff contacted Defendant personnel seeking to resume or understand the Bear River matter and asking where Kristine Maxwell and Jacque Ramos had left the matter.

**92.** On or about May 28-29, 2024, Plaintiff expressly complained to Defendant that no demand letter had been provided and that the deadline had been missed.

**93.** On or about May 31, 2024, Defendant personnel acknowledged that the firm had experienced issues involving members of its team and represented that Defendant would attempt to compile and provide relevant materials.

**94.** Plaintiff alleges that Defendant's failures constituted a continuing course of alleged delay, inadequate communication, deficient case management, failure to provide billed work product, failure adequately to preserve Plaintiff's claim, and failure to provide reasonable protection to Plaintiff upon termination or disruption of the representation.

## NON-EXHAUSTIVE NATURE OF THE PRESENT RECORD

**95.** Plaintiff expressly states that the factual chronology set forth in this Complaint is based upon records presently identified and available to Plaintiff, including emails, billing records, correspondence, payment records, insurance materials, contractor materials, engineering and inspection information, and communications concerning Defendant's representation.

**96.** The emails, communications, documents, billing entries, complaints, and other materials identified in this Complaint are not intended to constitute the complete record of the representation.

**97.** Plaintiff has not yet presented or incorporated every email, every communication, every complaint,

every billing record, every document, or every item of evidence relating to the Bear River Mutual matter or Defendant's representation.

**98.** Plaintiff alleges that additional communications, emails, documents, complaints, billing records, personnel records, and other evidence may exist and may be identified, obtained, produced, or presented during discovery or as otherwise permitted by the Federal Rules of Civil Procedure.

**99.** The omission of a particular email, communication, complaint, document, or event from this Complaint shall not be construed as an admission that such material does not exist, that the event did not occur, or that Plaintiff has abandoned any claim, fact, theory, or legally available remedy arising from the representation.

**100.** Plaintiff presently pleads the facts known to him and reasonably available to him at the time of filing and reserves the right to supplement, clarify, amend, or further particularize the factual allegations as permitted by the Federal Rules of Civil Procedure and applicable orders of the Court.

**101.** Plaintiff further alleges that the chronology presented herein is illustrative rather than exhaustive and is intended to identify material events presently known to Plaintiff, not to represent that every communication or item of evidence has been included.

## II. FEDERAL OBSTRUCTION / RETALIATION PREDICATE CONDUCT - 18 U.S.C. § 1513(e)

**102.** Plaintiff pleads 18 U.S.C. § 1513(e) as potential federal obstruction/retaliation predicate conduct supporting Civil RICO, not as a freestanding private damages cause of action. Section 1513 is contained in Chapter 73 of Title 18, Obstruction of Justice, and qualifying violations of § 1513 are included within 'racketeering activity' by 18 U.S.C. § 1961(1).

**103.** Section 1513(e) applies where a person knowingly, with intent to retaliate, takes harmful action against another person for providing to a law-enforcement officer truthful information relating to the commission or possible commission of a federal offense. Plaintiff invokes this provision only if the evidence establishes the required truthful report, law-enforcement recipient, retaliatory intent, harmful action, and causal connection.

**104.** DeGuelle v. Camilli, 664 F.3d 192 (7th Cir. 2011), is persuasive appellate authority recognizing that qualifying retaliation under § 1513(e) constitutes RICO predicate activity and may, when sufficiently related to other qualifying fraud predicates, contribute to a RICO pattern. In DeGuelle, the court reversed dismissal of the Civil RICO theory after considering the relationship between alleged fraud predicates and later retaliation.

**105.** Plaintiff does not allege that a billing dispute, malpractice, missed deadline, personnel transition, refund, or nondelivery of work product automatically constitutes obstruction under § 1513(e). The § 1513(e) predicate is preserved only to the extent discovery and proof establish the specific federal elements described above.

## III. FIRST AND PRINCIPAL FEDERAL CAUSE OF ACTION - CIVIL RICO - 18 U.S.C. §§ 1962(c) AND 1964(c)

**106.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**107.** 18 U.S.C. § 1962(c) prohibits a RICO person employed by or associated with an enterprise engaged in or affecting interstate or foreign commerce from conducting or participating, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. Section 1964(c) supplies

the private civil remedy for qualifying injury to business or property caused by a § 1962 violation.

## A. Controlling and Persuasive RICO Authority

**108.** Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), is directly relevant to the legal architecture pleaded here. Sedima involved alleged overbilling supported by mail- and wire-fraud predicates, and the Supreme Court held that a Civil RICO plaintiff need not establish a prior criminal conviction or a separate category of 'racketeering injury' beyond qualifying business-or-property injury caused by the RICO violation.

**109.** Dewey v. Lauer, No. 08-cv-01734-WYD-KLM (D. Colo. Sept. 30, 2009), is persuasive district-court authority within the Tenth Circuit. There, the court denied dismissal of a Civil RICO theory where plaintiffs pleaded fraudulent overbilling or false representations, payments made in reliance, and particularized mail or wire communications with sufficient detail at the pleading stage.

**110.** Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-63 (2001), recognizes that a natural person who conducts the affairs of a corporation is legally distinct from the corporation itself for § 1962(c) purposes. Plaintiff relies on that distinctness principle in alleging the Individual RICO Defendants as RICO persons and the Firm Defendant as the distinct enterprise for the principal RICO theory.

**111.** Reves v. Ernst & Young, 507 U.S. 170, 179, 185 (1993), requires participation in the operation or management of the enterprise's affairs. Accordingly, Plaintiff does not rely on job titles alone and alleges liability against each individual only to the extent the evidence establishes actual direction, management, decision-making, or other qualifying participation in the enterprise's affairs.

**112.** Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006), requires fraud-based RICO allegations to satisfy Federal Rule of Civil Procedure 9(b) by identifying with particularity the time, place and contents of the alleged false representation, the identity of the person making it, and the consequences. Plaintiff therefore pleads the presently known dates, communications, participants, billing events, payments, and consequences individually rather than alleging only that 'Hepworth committed fraud.'

**113.** H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), requires related predicate acts plus continuity or a threat of continuity. Plaintiff alleges a RICO pattern only to the extent the evidence establishes the required relationship and legally sufficient closed-ended or open-ended continuity; Plaintiff does not rely merely on the mathematical existence of two communications.

## B. Enterprise, RICO Persons, and Individualized Documentary Allegations

**114.** For the principal § 1962(c) theory, Plaintiff identifies Hepworth Legal / Hepworth & Associates, LLC as the alleged enterprise and the Individual RICO Defendants as the alleged RICO persons. Plaintiff alleges this structure only to the extent the evidence establishes the enterprise's effect on interstate commerce and each individual's qualifying participation in the enterprise's affairs.

**115.** Michael K. Hepworth: Plaintiff's contemporaneous September 28, 2022 email states that Plaintiff had spoken with Michael about the insurance claim on his North Salt Lake home and that Michael 'said he could pursue this.' Plaintiff alleges this communication as evidence personally connecting Michael Hepworth to the undertaking of the Bear River matter and Plaintiff's reliance on that undertaking.

**116.** Hallie Kinsley: On September 1, 2022, Hallie responded directly to Plaintiff that she was able to open the claim document and would 'have it filed and sent over to Jacque.' Hallie was also copied on the October 6, 2022 Bear River correspondence in which Plaintiff discussed engineering and structural damage and stated that Hepworth had the matter 'in hand,' and she was copied on the October 31, 2022

Bear River communication addressing the engineer, soffit, structural inspection, and CKR Engineers. Plaintiff alleges these records as evidence of receipt, internal routing, and continuing knowledge of substantive Bear River information.

**117.** Jacque M. Ramos: Jacque is identified as an attorney associated with Hepworth in the representation materials. Hallie's September 1, 2022 communication stated that Plaintiff's document would be sent to Jacque; Plaintiff's chronology further alleges that on February 10, 2023 Plaintiff communicated to personnel including Jacque that nothing was happening and that he needed a lawyer letter. Plaintiff alleges RICO participation against Jacque only to the extent evidence establishes what Jacque did after receiving or being assigned those materials and whether that conduct satisfies the operation-or-management and predicate requirements.

**118.** Kristine Maxwell: Plaintiff alleges that Kristine became involved in Plaintiff's matters during March 2023 and that Bear River communications involving her occurred during the period in which Plaintiff paid invoices, requested legal action, and the firm billed for demand-letter work. Plaintiff further alleges that by September 4, 2023 he became concerned Kristine was no longer handling the matter. The South Salt Lake hearing emails presently identified are not relied upon as proof of a Bear River RICO predicate; any Bear River allegation against Kristine must rest on Bear River-specific records and conduct.

**119.** Maili Workman is not presently alleged as a Bear River RICO person on the current documentary showing because the identified document concerning her relates to a South Salt Lake ALJ hearing rather than the Bear River claim. Chris Kovac of Bear River Mutual and Cameron Wright, the Chief Building Official, are alleged as underlying-claim witnesses or sources of evidence, not as Hepworth RICO persons. The separate R. Lane Jenson / Cannon Law retainer record is not attributed to Hepworth and is not pleaded as a Hepworth predicate.

## C. Fraud Predicates, Particularity, Pattern, Causation, and Injury

**120.** Mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 are included within the statutory definition of racketeering activity. Plaintiff does not assert those criminal statutes as freestanding private causes of action; they are alleged only as potential RICO predicates to the extent the statutory elements are established.

**121.** The presently identified predicate chronology includes billing on or about April 3, 2023 reflecting demand-letter work; the April 2023 request for and receipt of an additional approximately $3,000.00 retainer; billing during approximately April 21-27, 2023 reflecting policy review and drafting or preparation of a demand letter; continuing electronic communications while Plaintiff supplied documents and estimates through July and August 2023; the September 7, 2023 refund immediately before the identified September 8 deadline; and the April 4, 2024 invoice reflecting approximately $1,955.00 in Bear River work while Plaintiff alleges the corresponding completed work product remained unavailable.

**122.** Plaintiff alleges use of interstate wires under § 1343 only to the extent email, electronic billing, electronic-signature, payment-processing, portal, banking, or other records establish qualifying interstate transmissions used for the purpose of executing the alleged fraudulent scheme. Plaintiff alleges use of the mails under § 1341 only to the extent records establish use of the United States Postal Service or another qualifying mailing in furtherance of the alleged scheme.

**123.** Plaintiff alleges fraudulent intent only to the extent a responsible Defendant knew a material representation was false, knowingly concealed a material fact despite a duty to disclose, or otherwise possessed the state of mind required for the predicate offense. Ordinary negligence, billing error, incomplete legal work, or malpractice alone is not alleged to satisfy the RICO predicates.

**124.** Plaintiff alleges relatedness because the alleged predicate communications concern the same Bear River representation, legal-fee collection or retention, demand-letter work, work-product status, case-status representations, and continued reliance. Continuity is alleged only to the extent the evidence establishes a legally sufficient duration, repetition, extensiveness, or threat of continued racketeering activity under H.J. Inc.

**125.** Plaintiff alleges direct injury to business or property, to the extent established, including qualifying legal fees and retainers obtained or retained by reason of the alleged predicate fraud and any additional property injury proximately caused by the alleged RICO violation. Personal injury, pain, and emotional distress are not asserted as Civil RICO injury.

**126.** To the extent every element of § 1962(c) is established, Plaintiff alleges that the qualifying predicate acts were both a factual and proximate cause of the business-or-property injury for which Civil RICO relief is sought. Plaintiff seeks the remedies authorized by § 1964(c), including threefold qualifying damages and statutory costs, without duplicative recovery.

## IV. FRAUDULENT BILLING AND MATERIAL MISREPRESENTATION

**127.** Plaintiff alleges that the billing and payment conduct described herein was not merely an accounting discrepancy. Plaintiff alleges that the firm billed for demand-letter work, accepted additional money, continued receiving information and reliance, and later reflected additional Bear River work while the completed demand letter or corresponding completed work product allegedly remained unavailable.

**128.** Plaintiff alleges that billing and communications represented or implied that material Bear River legal work was being performed or handled; that the actual status, completion, and delivery of that work were material to Plaintiff's decisions to continue paying, supplying evidence, and refraining from obtaining substitute legal protection; and that materially false or misleading representations or concealment, if proven, support the separately pleaded fraud and RICO theories.

**129.** Plaintiff further alleges that Defendant's conduct constituted fraudulent billing directed toward, and facilitated by, Plaintiff's known disability-related limitations. After personally interacting with Plaintiff and becoming aware that his disability materially impaired his concentration, organization, comprehension, memory, and ability independently to review invoices, compare dates, identify inconsistencies, evaluate whether billed legal work had actually been performed, and promptly challenge questionable charges, Defendant nevertheless continued to seek, accept, retain, and bill Plaintiff for legal services under the circumstances alleged herein.

**130.** Plaintiff alleges that Defendant knew or reasonably understood that Plaintiff's disability made him materially less capable of detecting billing irregularities and inconsistencies that a person without those limitations could more readily identify and challenge. Plaintiff alleges that Defendant exploited that known disability-related vulnerability by obtaining or retaining payments, maintaining billing representations concerning work allegedly performed, and allowing Plaintiff to continue relying upon the representation while material information concerning the actual status, completion, and delivery of the legal work was not adequately disclosed.

**131.** Accordingly, Plaintiff alleges that the fraudulent billing was not merely an accounting error or ordinary professional negligence. Plaintiff alleges that Defendant knowingly obtained a financial advantage from a disabled client whose known functional limitations materially reduced his ability to detect, understand, and challenge the billing and service irregularities. To the extent established by the evidence, this conduct supports Plaintiff's claims for fraud, fraudulent misrepresentation, fraudulent concealment, and breach of fiduciary duty, and further supports the independently pleaded ADA theory to

the extent the exploitation of Plaintiff's known disability resulted in disability-based unequal treatment or interference with his full and equal participation in and benefit from Defendant's covered legal services under 42 U.S.C. §§ 12182 and 12203(b).

## V. SECOND FEDERAL CAUSE OF ACTION - DISABILITY / TITLE III ADA AND ADA INTERFERENCE

### A. Disability-Related Facts

**132.** Plaintiff alleges that during the relevant period he experienced disability-related physical limitations, severe pain, stress, emotional distress, impaired concentration, and periods in which his functional ability to process and manage complex legal matters was materially diminished.

**133.** Plaintiff alleges that these circumstances materially increased his dependence upon the professional representation Defendant had undertaken to provide.

**134.** Plaintiff alleges that his physical limitations and severe pain affected his ability to independently manage the underlying legal dispute, organize extensive documentation, evaluate procedural deadlines, communicate with insurers and contractors, and protect his legal interests without professional assistance.

**135.** Plaintiff alleges that Defendant's personnel had substantial opportunity to observe or become aware of Plaintiff's condition and functional limitations through their direct communications and handling of the matter.

**136.** Plaintiff alleges that Defendant nevertheless continued to accept Plaintiff's reliance upon the representation while failing adequately to communicate the status of the matter and the consequences of the approaching deadline.

**137.** Plaintiff alleges that the combination of disability-related limitations, severe pain, impaired concentration, emotional distress, and dependence upon professional representation made meaningful access to and participation in the professional services particularly important to Plaintiff.

**138.** Plaintiff alleges that Defendant's conduct occurred while Defendant knew or reasonably should have known that Plaintiff's disability-related limitations materially affected his ability to independently manage the matter.

**139.** Plaintiff alleges that the circumstances described above affected Plaintiff's ability to receive the full and equal benefit of the legal services Defendant had undertaken to provide.

**140.** Plaintiff alleges that the disability-related circumstances were not merely incidental to the representation but materially affected Plaintiff's ability to communicate, organize information, understand the status of the matter, respond to developments, and protect his legal interests.

### B. Title III of the Americans with Disabilities Act

**141.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**142.** Plaintiff alleges that he is an individual with a disability protected by Title III of the ADA, to the extent established by the evidence.

**143.** Defendant is a private entity providing professional legal services through a lawyer's office, a category expressly identified in 42 U.S.C. § 12181(7)(F), subject to the statutory requirements, including the commerce requirement stated in § 12181(7).

**144.** Plaintiff was a client or customer receiving Defendant's covered professional legal services. See 42 U.S.C. § 12182(b)(1)(A)(iv).

**145.** 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201 protect the full and equal enjoyment of covered services from discrimination on the basis of disability.

**146.** 42 U.S.C. § 12182(b)(1)(A)(i)-(ii) prohibits disability-based denial of the opportunity to participate in or benefit from covered services and disability-based unequal opportunity to participate in or benefit from those services.

**147.** 42 U.S.C. § 12182(b)(1)(D) prohibits standards, criteria, or methods of administration that have the effect of discriminating on the basis of disability.

**148.** 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302 require reasonable modifications in policies, practices, or procedures when necessary to afford covered services to individuals with disabilities, unless the modification would fundamentally alter the nature of the services.

**149.** To the extent applicable and established by the evidence, 42 U.S.C. § 12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303 require necessary steps, including appropriate auxiliary aids and services where required, to prevent exclusion, denial of services, segregation, or different treatment because of the absence of such aids or services and to ensure effective communication subject to the regulation's limitations.

**150.** Plaintiff alleges that Defendant knew or reasonably should have known of Plaintiff's disability-related functional limitations and their material effect on his ability to independently organize, evaluate, understand, communicate concerning, and protect his interests in the complex legal matter.

**151.** Plaintiff alleges that the chronology from August 2022 through September 2023 shows continued retention, payment, delivery of evidence, requests for legal action, personnel transitions, billing for a demand letter, continued reliance, absence of the promised work product, uncertainty concerning the responsible attorney, a refund on September 7, 2023, and the alleged deadline on September 8, 2023.

**152.** Plaintiff alleges that communication, continuity of representation, case assignment, work-product delivery, deadline notice, and termination or disruption of representation were methods by which Defendant administered the legal services.

**153.** Plaintiff alleges, to the extent established by the evidence, that those methods of administration, viewed together with Defendant's knowledge or reasonable knowledge of Plaintiff's disability-related limitations, denied or impaired Plaintiff's full and equal opportunity to participate in and benefit from the covered legal services on the basis of disability.

**154.** To the extent the evidence establishes that a disability-related modification to Defendant's policies, practices, or procedures was necessary to afford equal access to the legal services and was not a fundamental alteration, Plaintiff alleges that failure to make such a modification violated 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

**155.** To the extent the evidence establishes that auxiliary aids or services were necessary for effective communication and that the requirements of 42 U.S.C. § 12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303 were otherwise satisfied, Plaintiff alleges a violation of those provisions.

**156.** Plaintiff alleges that the federal injury is the disability-related impairment or denial of full and equal participation in and benefit from the covered professional services; the separate loss of the underlying insurance claim and associated monetary losses are pleaded under the related state-law claims.

**157.** Plaintiff invokes 42 U.S.C. § 12188 for civil enforcement of this Title III claim and seeks the relief legally available through that provision.

### C. ADA Interference - 42 U.S.C. § 12203(b), To the Extent Established

**158.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**159.** 42 U.S.C. § 12203(b) prohibits coercion, intimidation, threats, or interference with an individual in the exercise or enjoyment of, or because that individual exercised or enjoyed, a right granted or protected by the ADA.

**160.** The ADA rights relevant to this conditional claim are the Title III rights identified above, including full and equal enjoyment, equal opportunity to participate in and benefit from covered services, and any applicable right to a necessary reasonable modification or auxiliary aid or service.

**161.** Plaintiff alleges that Defendant knew or reasonably should have known of the disability-related circumstances described herein and continued administering the representation through the communication, continuity, work-product, deadline-notice, and disruption practices alleged above.

**162.** To the extent the evidence establishes that any challenged act or omission actually interfered with Plaintiff's exercise or enjoyment of a specific ADA-protected right, rather than merely constituting professional negligence, Plaintiff alleges a violation of 42 U.S.C. § 12203(b).

**163.** Plaintiff specifically relies on the September 2023 sequence only to the extent the evidence connects the alleged absence of meaningful status information, uncertainty concerning responsible counsel, the September 7 refund, or related conduct to interference with an identified ADA-protected right.

**164.** This count is not pleaded as a generic prohibition against taking advantage of a vulnerable client and does not allege that every professional error constitutes ADA interference.

**165.** Plaintiff seeks only the relief legally available for any violation of 42 U.S.C. § 12203(b) that is established by the evidence.

## VI. LEGAL MALPRACTICE / PROFESSIONAL NEGLIGENCE - SUPPLEMENTAL CLAIM UNDER 28 U.S.C. § 1367(a)

**166.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**167.** This claim is pleaded as a related state-law claim within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

**168.** An attorney-client relationship existed between Plaintiff and Defendant, beginning with the 2022 consultation, executed representation documentation, acceptance of the initial retainer, and Defendant's acknowledgment of the representation.

**169.** Defendant owed Plaintiff the professional duties ordinarily owed by attorneys to their clients, including the duty to exercise the degree of care, skill, diligence, and professional judgment required under applicable law.

**170.** Plaintiff alleges breach through unreasonable delay, inadequate communication, deficient handling of the matter, failure adequately to protect Plaintiff against the identified deadline, failure adequately to provide billed work product, and failure adequately to protect Plaintiff's interests upon termination or disruption of the representation.

**171.** The chronology alleged in support of breach includes Plaintiff's February 10 and March 27, 2023 requests for a lawyer letter; Defendant's April 2023 billing for demand-letter work; the additional approximately $3,000.00 retainer; the continued absence of a delivered completed demand letter; the July 10, 2023 last known substantive correspondence before the alleged deadline; and the September 2023 loss

of continuity and communication.

**172.** Plaintiff alleges that the August 10 and August 12, 2023 estimates supplied Defendant with substantial evidence of the value and repair scope of the underlying claim before the identified deadline.

**173.** Plaintiff alleges that Defendant's September 7, 2023 refund occurred approximately one day before the identified September 8, 2023 deadline and that Defendant failed adequately to provide prior notice or protection that would permit Plaintiff reasonably to preserve the underlying claim or obtain substitute representation.

**174.** Plaintiff alleges actual causation because, but for Defendant's alleged breaches, Plaintiff would have had a timely and meaningful opportunity to preserve and pursue the underlying claim, subject to proof through the applicable case-within-a-case analysis.

**175.** Plaintiff alleges proximate causation because the loss of a claim through an unprotected material deadline was a direct and legally attributable consequence of the specific representation Defendant allegedly undertook to handle and protect, subject to proof at trial.

**176.** Plaintiff alleges that the post-deadline 2024 invoice, his May 2024 complaints concerning the missing demand letter and missed deadline, and Defendant's May 31, 2024 acknowledgment of team issues further bear on the status, continuity, and work-product history of the representation.

**177.** Plaintiff suffered actual damages as alleged below.

## VII. BREACH OF FIDUCIARY DUTY - SUPPLEMENTAL CLAIM UNDER 28 U.S.C. § 1367(a)

**178.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**179.** This claim is pleaded as a related state-law claim within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

**180.** The attorney-client relationship imposed fiduciary obligations upon Defendant.

**181.** Plaintiff alleges that Defendant breached duties owed to Plaintiff through conduct inconsistent with the loyalty, candor, disclosure, diligence, and protection of client interests required by the attorney-client relationship.

**182.** Plaintiff alleges that the dated course of conduct relevant to this count includes accepting retainers and continued reliance; billing for legal work; failing adequately to disclose the actual status of the demand letter and representation; personnel transitions; the approaching deadline; the alleged absence of adequate prior termination or disruption notice; and the September 7, 2023 refund immediately before the identified deadline.

**183.** Plaintiff alleges that Defendant accepted Plaintiff's continued reliance while failing adequately to disclose the status and danger to the underlying claim, and that the 2024 communications concerning missing work product and team issues further bear on that alleged breach.

**184.** Plaintiff alleges that those breaches were actual and proximate causes of the damages claimed below.

## VIII. BREACH OF CONTRACT - SUPPLEMENTAL CLAIM UNDER 28 U.S.C. § 1367(a)

**185.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**186.** This claim is pleaded as a related state-law claim within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

**187.** Plaintiff retained Defendant to provide professional legal services concerning the Bear River Mutual dispute, Defendant accepted that undertaking, and Defendant accepted payment for professional services.

**188.** Plaintiff alleges performance of his own obligations through payment of the requested retainers and invoices and repeated provision of information, photographs, engineering material, contractor material, policy information, bids, and other documentation necessary or requested for the representation.

**189.** Plaintiff alleges that Defendant failed to perform material obligations arising from the representation, including the professional services for which Defendant was retained and paid.

**190.** Plaintiff specifically alleges that the April 2023 billing entries reflected drafting or preparation of a demand letter, yet the completed demand letter and corresponding work product were not delivered to him; that the matter remained unresolved through July and August 2023; and that the representation was allegedly terminated or materially disrupted immediately before the identified September 8, 2023 deadline without adequate communication or protection.

**191.** Plaintiff alleges that the failure to provide promised or billed legal work, failure adequately to protect the claim, and failure adequately to communicate the termination or disruption of representation constituted material breaches to the extent established by the evidence.

**192.** Plaintiff alleges that those breaches actually and proximately caused the damages claimed below.

## IX. FRAUD / FRAUDULENT MISREPRESENTATION / FRAUDULENT CONCEALMENT - SUPPLEMENTAL CLAIM UNDER 28 U.S.C. § 1367(a)

**193.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**194.** This claim is pleaded solely as a related state-law claim within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) and is not asserted as an additional federal jurisdictional theory.

**195.** Plaintiff alleges that Defendant, through billing entries, communications, continued acceptance of retainers, and its handling of the Bear River matter, made material representations or omissions concerning the existence, progress, completion, delivery, and status of legal work and concerning the continuity and status of the representation.

**196.** Plaintiff specifically alleges that on or about April 3, 2023 Defendant's billing reflected demand-letter work; that on or about April 6, 2023 Defendant requested an additional approximately $3,000.00 retainer for the Bear River matter; that Defendant's records reflected receipt of that additional payment on or about April 13, 2023; that during approximately April 21-27, 2023 billing records reflected review of the policy and drafting or preparation of a demand letter; and that Plaintiff nevertheless was never provided the completed demand letter or corresponding completed work product reflected in those billing entries.

**197.** Plaintiff further alleges that he continued supplying documents, contractor materials, inspection information, and estimates through July and August 2023 while reasonably relying upon Defendant's undertaking and the representations or implications that the Bear River matter was being handled.

**198.** Plaintiff alleges that by September 4, 2023 he became concerned that Kristine Maxwell was no longer handling the matter, yet the actual status of responsible counsel, the representation, the alleged demand letter, and the approaching deadline had not been adequately disclosed to him.

**199.** Plaintiff alleges that Defendant issued a refund of approximately $1,045.00 on September 7, 2023,

approximately one day before the September 8, 2023 deadline identified by Plaintiff, without adequate prior disclosure of the material disruption or termination of the representation and without delivery of the completed demand letter.

**200.** Plaintiff alleges that, to the extent proven, Defendant knew the true status of the work and representation, or acted with reckless disregard for that status, while allowing Plaintiff to continue relying upon materially incomplete or misleading information concerning the handling of the matter.

**201.** Plaintiff alleges that the actual existence or nonexistence of the completed demand letter, the identity and continuity of responsible counsel, the true status of the Bear River representation, and the danger presented by the approaching deadline were material facts because disclosure of those facts would have affected whether Plaintiff continued paying and relying upon Defendant or sought substitute legal protection.

**202.** Plaintiff further alleges that the attorney-client relationship, Defendant's continued undertaking of the matter, and Defendant's acceptance of payment and reliance gave rise to duties of candor and disclosure concerning material facts about the status of the representation, and that concealment of such facts is alleged only to the extent established by the evidence.

**203.** Plaintiff alleges that the purpose and effect of the representations and omissions was to induce or maintain Plaintiff's reliance upon Defendant's continued handling of the matter, including continued payment, continued production of information, and continued forbearance from obtaining substitute protection before the identified deadline.

**204.** Plaintiff alleges actual and justifiable reliance to the extent established by the evidence, including the approximately $8,000.00 in retainers, continued submission of evidence and estimates, continued reliance on Defendant to perform the retained legal work, and loss of time in which substitute action could have been taken.

**205.** Plaintiff further alleges that the April 4, 2024 invoice reflecting approximately $1,955.00 in Bear River work, his May 28-29, 2024 complaints that no demand letter had been provided and the deadline had been missed, and Defendant's May 31, 2024 acknowledgment of team issues are relevant to whether earlier representations or omissions concerning work product and case status were materially false, misleading, or concealed.

**206.** Plaintiff alleges that the foregoing fraudulent representations, omissions, or concealment, to the extent established by the evidence, actually and proximately caused monetary loss, loss of the timely opportunity to protect the underlying claim, and the other damages sought under the supplemental state-law claims.

## X. CASE-WITHIN-A-CASE AND CAUSATION

### A. Underlying Bear River Claim - Documented Merit, Structural Risk, and Economic Value

**207.** Plaintiff alleges that the underlying Bear River insurance claim arose from the September 8, 2020 windstorm and involved substantial structural damage to Plaintiff's residence, not merely a cosmetic roofing dispute. Plaintiff alleges that the underlying record described failed or damaged roof and supporting components and conditions requiring structural evaluation and repair.

**208.** Plaintiff alleges that engineering work performed by CKR Engineers during approximately March 30 through April 4, 2021, including work attributed in the underlying materials to engineer Steven Cosper, documented structural conditions including split rafters, damaged support members, punctured or

sagging roof sheathing, and other compromised structural components. Plaintiff alleges, to the extent established by the engineering records, that removal, replacement, bracing, or further structural work was identified as necessary.

**209.** Plaintiff further alleges that the engineering assessment was not represented as a complete investigation of every concealed condition and that additional inspection could become necessary after obstructing materials were removed. Plaintiff alleges that this made continued documentation, timely legal action, preservation of evidence, and competent management of the insurance dispute materially important.

**210.** Plaintiff alleges that the underlying claim was supported by substantial repair-cost evidence. The record described by Plaintiff included contractor estimates in the approximate range of $85,000.00 to $91,200.00, including contractor information associated with Kent Biesinger. As already alleged in this Complaint, Plaintiff provided Defendant an estimate of approximately $88,864.00 on or about August 10, 2023 and updated bid or repair information of approximately $91,200.00 on or about August 12, 2023.

**211.** Plaintiff therefore alleges that the underlying insurance claim had concrete engineering, inspection, contractor, repair-cost, photographic, and correspondence evidence and possessed substantial economic significance. Plaintiff does not plead the underlying Bear River claim as a speculative possibility; he alleges that it was an identifiable property claim supported by records whose legal preservation and pursuit had measurable value.

**212.** Plaintiff alleges that Defendant received, was sent, or had access to substantial portions of the engineering, contractor, insurance, photographic, inspection, and repair-cost record during the representation. Plaintiff therefore alleges that Defendant knew or reasonably should have understood both the material value of the underlying claim and the consequences that loss of a material deadline could have upon Plaintiff's ability to pursue that value.

## B. Case-Within-a-Case Causal Chain

**213.** For purposes of the legal-malpractice claim, Plaintiff alleges that the underlying Bear River matter supplies the required case-within-a-case causal framework. Plaintiff alleges that, but for Defendant's acts and omissions, he would have had a timely and meaningful opportunity to preserve, present, negotiate, litigate, or otherwise pursue the underlying insurance claim and the legally recoverable benefits or damages associated with it, subject to proof of the underlying claim and applicable defenses.

**214.** The causal sequence alleged by Plaintiff is direct: a documented structural loss occurred; an insurance dispute remained unresolved; Plaintiff retained Defendant specifically to provide legal protection and advance that dispute; Plaintiff supplied engineering, contractor, insurance, photographic, and repair-cost materials; Plaintiff repeatedly requested affirmative legal action; Defendant billed for demand-letter and related work; Plaintiff alleges that the completed billed work product was not delivered; continuity and status of representation became uncertain; the identified September 8, 2023 deadline arrived; and Plaintiff's timely opportunity to protect and pursue the underlying claim was thereby lost or materially impaired.

**215.** Plaintiff alleges that the claimed loss was foreseeable because preservation and advancement of the Bear River matter were central purposes of the professional representation. The alleged failure to communicate the true status of the work, failure to deliver the billed work product, and disruption of representation immediately before the identified deadline were therefore directly connected to the very legal interest Defendant had undertaken to protect.

**216.** Plaintiff alleges resulting economic injury to the extent established through the applicable

case-within-a-case analysis, including the value of the underlying claim or lost opportunity, legal fees and retainers allegedly obtained or retained through actionable conduct, increased repair and consequential costs, and other legally recoverable property or economic loss proximately attributable to Defendant's conduct.

**217.** Plaintiff does not allege that every allegation against Bear River Mutual is automatically established against Defendant in this action. The underlying insurance facts are pleaded here to establish the existence, seriousness, evidentiary support, economic value, and legal significance of the matter Defendant undertook to handle, and to permit the Court and factfinder to evaluate causation and damages without treating the missed opportunity as abstract or speculative.

### C. Protected Legal Interests and Foreseeability

**218.** Plaintiff alleges that Defendant's conduct implicated concrete protected interests arising from the attorney-client relationship and the covered legal services, including Plaintiff's client funds, truthful and nonmisleading billing, candid disclosure of material case status, continuity of professional representation, preservation of a valuable underlying property claim, a meaningful opportunity to obtain substitute counsel before a material deadline, and, as separately pleaded under the ADA, meaningful and equal access to professional services in light of known disability-related functional limitations.

**219.** Plaintiff further alleges that Defendant's knowledge or reasonable knowledge of the structural seriousness and economic magnitude of the underlying loss, together with its knowledge or reasonable knowledge of Plaintiff's disability-related limitations and dependence upon professional assistance, made the consequences of prolonged inaction, misleading status information, nondelivery of billed work product, and last-minute disruption particularly foreseeable.

**220.** Plaintiff alleges that once Defendant accepted payment, received the underlying record, billed for affirmative legal work, and permitted Plaintiff to continue relying upon the representation, it was reasonably foreseeable that inaccurate or incomplete billing and status representations, failure to provide completed work product, or failure to give meaningful warning of a threatened deadline could deprive Plaintiff of the opportunity to make an informed decision, challenge the billing, obtain substitute protection, and preserve the underlying claim.

**221.** These allegations are pleaded as additional factual support for causation, foreseeability, damages, fiduciary breach, fraud, fraudulent concealment, fraudulent billing, and the disability-related federal theories otherwise stated in this Complaint. Except where expressly pleaded as a separate cause of action elsewhere, this section does not create an additional independent count.

## XI. EQUITABLE ESTOPPEL - GLUS v. BROOKLYN EASTERN DISTRICT TERMINAL

**222.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein for purposes of equitable estoppel and any limitations defense.

**223.** Plaintiff invokes Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 232-235 (1959), as equitable authority concerning a defendant's ability to rely upon a limitations defense after its own responsible agents have allegedly induced delay or justifiably misled a claimant concerning the protection or timing of a legal right.

**224.** Glus recognized the longstanding equitable principle that a party may not obtain the benefit of its own wrong and held that a claimant who proves he was justifiably misled into a good-faith belief concerning the time to sue may be entitled to estoppel against the party responsible for the misleading

conduct.

**225.** Plaintiff alleges that Defendant accepted the representation and payments, received Plaintiff's evidence, billed for demand-letter work, continued the representation through personnel transitions, and permitted or caused Plaintiff to continue relying upon Defendant's handling of the Bear River matter while the September 8, 2023 deadline identified by Plaintiff approached.

**226.** Plaintiff further alleges that the actual status of the demand letter, the identity and continuity of responsible counsel, the status of the representation, and the danger presented by the approaching deadline were not adequately disclosed before Defendant issued the September 7, 2023 refund.

**227.** To the extent Defendant asserts a statute-of-limitations or similar timeliness defense to claims against Defendant in this action, Plaintiff alleges that Defendant should be equitably estopped from obtaining the benefit of a delay that Plaintiff proves was caused by Defendant's own representations, concealment, continued undertaking, or other conduct upon which Plaintiff justifiably relied.

**228.** Plaintiff pleads Glus as equitable authority and not as a separate federal cause of action or independent basis of subject-matter jurisdiction. Plaintiff further does not allege that Glus automatically revives an underlying claim against a different nonparty or automatically tolls every limitations period; application of estoppel depends upon the governing limitations law and the facts proven.

## XII. DAMAGES

**229.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**230.** As a direct and proximate result of Defendant's alleged acts and omissions, Plaintiff claims legally recoverable damages under the related state-law claims, subject to proof at trial and applicable limitations imposed by law.

**231.** Property, Repair, Economic, and Consequential Damages - $800,000.00. Plaintiff seeks the value of the underlying claim to the extent established through the applicable case-within-a-case analysis, repair-related losses, increased costs, consequential economic losses, and other economic injury legally attributable to Defendant's conduct.

**232.** Pain, Emotional Distress, Stress, and Related Damages - $1,000,000.00. Plaintiff seeks such non-economic damages, including severe emotional distress, stress, anxiety, disruption of ordinary life, and related injury, only to the extent such damages are legally recoverable under applicable state law and established by the evidence.

**233.** Punitive Damages - $420,000.00. Plaintiff seeks punitive damages to the extent authorized by applicable state law and upon proof satisfying the applicable statutory and evidentiary requirements.

**234.** Equipment, Communications, Email, Vehicle, and Related Expenses - $5,000.00. Plaintiff seeks documented and legally recoverable equipment, electronic-communication, records, document-preparation, mailing, copying, transportation, and related out-of-pocket expenses proximately caused by Defendant's alleged conduct. TOTAL DAMAGES DEMANDED UNDER THE RELATED STATE-LAW CLAIMS: $2,225,000.00.

**235.** In addition to the separately stated state-law damages, Plaintiff seeks, only if the Civil RICO count is established, the remedies authorized by 18 U.S.C. § 1964(c), including threefold recovery of qualifying business-or-property damages and statutory costs, with any attorney fee limited to amounts legally incurred and recoverable and with no duplicative recovery for the same injury. XVI. PRAYER FOR RELIEF

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

**A.** Enter judgment in favor of Plaintiff and against the appropriate Defendant or Defendants on each claim established by the evidence;

**B.** Award Plaintiff legally recoverable compensatory and consequential damages under the supplemental state-law claims, presently claimed in the amount of $800,000.00;

**C.** Award legally recoverable non-economic damages under the supplemental state-law claims, presently claimed in the amount of $1,000,000.00, to the extent permitted by applicable law;

**D.** Award punitive damages under the supplemental state-law claims, presently claimed in the amount of $420,000.00, upon the showing required by applicable law;

**E.** Award documented and legally recoverable out-of-pocket expenses under the supplemental state-law claims, presently claimed in the amount of $5,000.00;

**F.** If Plaintiff establishes Civil RICO liability against an Individual RICO Defendant, award the remedies authorized by 18 U.S.C. § 1964(c), including threefold qualifying business-or-property damages and statutory costs, without duplicative recovery;

**G.** Grant all relief legally available for the Title III claim through 42 U.S.C. § 12188;

**H.** Grant all relief legally available under 42 U.S.C. § 12203(b), to the extent Plaintiff establishes interference with the exercise or enjoyment of an ADA-protected right;

**I.** Apply equitable estoppel to any limitations defense asserted by a Defendant to the extent the governing law and facts proven warrant such relief, consistent with Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231 (1959);

**J.** Exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state-law claims;

**K.** Award taxable costs and pre-judgment and post-judgment interest to the extent authorized by applicable law; and

**L.** Grant such other and further relief as the Court determines just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**KERRY RICK HUBBLE**

Plaintiff, Pro Se

Date: 09-10-2026

Salt Lake City-Utah USA